UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| GEOFFREY GITHUI KINYUA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLIC OF THE SUDAN, et al., <br><br> Defendants. | Civil Action No. 14-2118 (JDB) |

## MEMORANDUM OPINION

Before the Court is [38] plaintiffs' motion to alter the judgment under Federal Rule of Civil Procedure 59(e) or relieve them from judgment under Rule 60(b). For the reasons explained below, the Court will deny the motion.

## I. BACKGROUND

The Court will assume familiarity with the facts of this case as set out in its prior opinions. See Mar. 30, 2018 Mem. Op. [ECF No. 34]; Mar. 24, 2016 Mem. Op. [ECF No. 28].[1] Plaintiffs are family members of Moses Kinyua, who was injured in al Qaeda's bombing of the U.S. Embassy in Nairobi, Kenya in 1998. They filed a lawsuit sixteen years later, alleging that Sudan and Iran were liable for their emotional distress and other injuries under the Foreign Sovereign Immunities Act (FSIA). Compl. [ECF No. 1] at 2. Sudan challenged plaintiffs' claims as untimely and, on March 24, 2016, the Court dismissed plaintiffs' claims against the Sudanese defendants as outside the FSIA's statute of limitations. See Mar. 24, 2016 Order [ECF No. 29]. Iran, on the other hand, never appeared in the case, as is its custom in FSIA cases. Because plaintiffs had not briefed the statute of limitations issue as applied to Iran, the Court did not immediately dismiss the

---

[1] These decisions have been published as Sheikh v. Republic of Sudan, No. CV 14-2090 (JDB), 2018 WL 1567578 (D.D.C. Mar. 30, 2018), and Sheikh v. Republic of Sudan, 172 F. Supp. 3d 124 (D.D.C. 2016).

1

claims against the Iranian defendants, but rather ordered plaintiffs to show cause why those claims should not likewise be dismissed. Id. Plaintiffs filed a supplemental brief providing several reasons why they believed the statute of limitations should not bar their claims against the Iranian defendants. See Pls.' Supp. Br. [ECF No. 31] at 2–6.

As the Court examined the issue, however, Sudan appealed the Court's judgment holding Sudan liable for the 1998 embassy bombings in Kenya and Tanzania in several other FSIA cases. The Court therefore decided neither to dismiss the claims against Iran nor to grant a default judgment, but rather to stay the case until that appeal—which raised legal questions relevant to the disposition of this case—was resolved. See Apr. 27, 2016 Order [ECF No. 32] at 1–2. The D.C. Circuit issued its opinion in the Owens appeal in July 2017. See Owens v. Republic of Sudan, 864 F.3d 751 (D.C. Cir. 2017). The Court ultimately un-stayed this case and denied plaintiffs' motion for a default judgment against the Iranian defendants. See Mar. 30, 2018 Order [ECF No. 33]; Mar. 30, 2018 Mem. Op. at 14. Plaintiffs then timely filed the instant motion to alter the judgment or relieve them from judgment under Federal Rules of Civil Procedure 59(e) and 60(b). See Mot. to Alter J. [ECF No. 38]; Statement of P. & A. in Supp. of Pls.' Mot. ("P. & A.") [ECF No. 38-1].

## II. LEGAL STANDARD

Rule 59(e) allows a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). This rule "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (citation omitted). Therefore, Rule 59(e) motions may be granted "under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'"

2

Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018) (citation omitted). "Although the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration or amendment of a judgment is nonetheless an extraordinary measure." Id.

Under Rule 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for several reasons, among them "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)–(b)(1). The rule "was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts. It cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." Smalls v. United States, 471 F.3d 186, 191 (D.C. Cir. 2006) (citation and alterations omitted). Therefore, like Rule 59(e), Rule 60(b) "does not afford [a litigant] an opportunity to retry her case." Greer v. Paulson, 505 F.3d 1306, 1317 (D.C. Cir. 2007). In particular, "relief for excusable neglect 'is rare' as 'such motions allow district courts to correct only limited types of substantive errors.'" Owens v. Republic of Sudan, 864 F.3d at 818 (citation omitted). As under Rule 59(e), motions under Rule 60(b) are committed to the broad discretion of the Court. See id.

"As the moving part[ies], [plaintiffs have] the burden of demonstrating that relief under either of these Rules is warranted." Kittner v. Gates, 783 F. Supp. 2d 170, 172 (D.D.C. 2011).

### III. DISCUSSION

Among the cases considered in the consolidated Owens action were Wamai v. Republic of Sudan and Opati v. Republic of Sudan. In their reconsideration motion, plaintiffs claim that they "actively tried to be involved in the timely Wamai and Opati cases involving fellow family members, believed they were covered by the timely Wamai and Opati cases, and diligently sought assistance of counsel when they learned they were not included." P. & A. at 5. Plaintiffs therefore

3

ask the Court either to alter the judgment under Rule 59(e) or to vacate the judgment under Rule 60(b). The Court examines these requests in turn.

1. Alteration Under Rule 59(e)

Plaintiffs first contend that the Court should alter its judgment under Rule 59(e) because "a manifest injustice would result if the Court's sua sponte raising of the statute of limitations stands." Id. The Court should not invoke the statute of limitations, plaintiffs assert, since they filed their suit late only because they mistakenly believed they had been involved in earlier, timely actions, and they did not realize their error until a list of successful claimants from those suits was published in 2014. See id. However, "Rule 59(e) motions are aimed at reconsideration, not initial consideration." GSS Grp., Ltd. v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012) (citation omitted). "Accordingly, a 'Rule 59(e) motion may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Id. (citation omitted).

As plaintiffs themselves acknowledge, the facts they now raise to support their motion "were not before the Court when the Court rendered its decision." P. & A. at 4. Plaintiffs do not give any reason why they could not have provided the Court with this information earlier. Indeed, the Court invited just such an argument as plaintiffs now make when it gave them the "opportunity" to "review the Court's analysis" on the statute of limitations in its March 2016 opinion "and to raise any argument" as to why the claims against Iran should not be dismissed. Mar. 24, 2016 Mem. Op. at 15. In response, plaintiffs raised four arguments for maintaining its claims against Iran: (1) that it would be an abuse of discretion to invoke the statute of limitations when Iran has deliberately not raised the issue; (2) that it is not "readily apparent" that plaintiffs' claims are untimely, because their case may have been filed within sixty days of a timely related action; (3) that the equities weigh against raising timeliness on Iran's behalf; and (4) that the FSIA does not

require dismissal of plaintiffs' claims. See Pls.' Supp. Br. at 2–6. At no point did plaintiffs raise their prior efforts to join the timely Wamai and Opati actions as a reason not to dismiss their claims. As plaintiffs "could have made" this argument in their brief, "but elected not to do so," their argument is forfeited. GSS Grp., 680 F.3d at 812.

Moreover, reconsideration is only warranted in the rare instances in which "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004) (citation omitted). Plaintiffs base their case for reconsideration on the last of these options, the "manifest injustice" catch-all. But plaintiffs must meet "a high threshold" to succeed in obtaining reconsideration. Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015); see Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 17 (D.C. Cir. 2015) ("[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." (citation omitted)). In particular, "manifest injustice 'does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered.'" Leidos, 881 F.3d at 217 (quoting Ciralsky, 355 F.3d at 665); accord Mohammadi, 782 F.3d at 18. That is exactly what happened here. Plaintiffs did not raise information that they now argue is important in weighing the equities—not in their complaint, not in their brief showing cause why their claims should not be dismissed, and not during the nearly two years in which this case had been stayed.[2] Since their argument is thereby forfeited, failure to consider it cannot constitute manifest injustice.

Even if plaintiffs' argument had not been waived, however, reconsideration would be unwarranted. "'[M]anifest injustice' requires 'at least (1) a clear and certain prejudice to the

---

[2] While proceedings in the case were stayed, plaintiffs certainly could have moved to lift the stay for the limited purpose of providing the facts and affidavits they have since provided in their motion for reconsideration.

5

moving party that (2) is fundamentally unfair in light of governing law.'" Leidos, 881 F.3d at 217 (citation omitted). Although plaintiffs claim that the Court decided this case "based on an erroneous and inadequate record," Pls.' Supp. Br. at 1, they have not shown that their supplemental information renders the Court's prior decision manifestly unjust under this standard. First, the judgment did not prejudice plaintiffs when they could have brought up their prior efforts to join the Wamai and Opati litigation "at any time before judgment" but "chose not to," and "do[] not offer any reason for [their] delay." Leidos, 881 F.3d at 219.

And second, even assuming the Court's decision to dismiss plaintiffs' claims prejudiced them, that prejudice was not fundamentally unfair because the decision remains compliant with governing law. Plaintiffs do not contest this: they claim not that the Court lacks discretion to invoke the statute of limitations sua sponte here, but rather only that the Court "should not do so." P. & A. at 5. This is because plaintiffs are not among the sort who would exploit prior judgments to pursue otherwise untimely default actions against foreign nations, a concern the Court raised in its March 30 opinion. Id. at 4. The Court does not doubt plaintiffs' statements that they filed this suit out of time because they were mistakenly led to believe that they had been included in earlier, timely litigation or otherwise were kept out of that litigation. See Martin Munga Njeri Aff. [ECF No. 38-3] ¶¶ 15–16; Susan Wanjugu Wachira Aff. [ECF No. 38-4] ¶¶ 26–27, 30–31; Geofrey Githui Kinya Aff. [ECF No. 38-5] ¶¶ 26–27, 30–31. However, the possibility of plaintiffs' exploiting long-ago judgments was only one of several factors that, the Court found, favored raising the statute of limitations in FSIA cases when the defendant country has a practice of not appearing. See Mar. 30, 2018 Mem. Op. at 8–13. Each of these factors constituted a general concern about allowing untimely FSIA actions, and together justified a decision to refuse default judgments in such actions. Thus, the Court determined that it was appropriate under governing

6

law to raise the statute of limitations sua sponte in untimely FSIA default judgment actions brought against nations, like Iran, that consistently refuse to appear in such cases. See id. at 13. The facts that plaintiffs lay out regarding their belief that they had been parties to the Wamai and Opati cases do not alter or render fundamentally unfair the Court's judgment.[3] Nor do plaintiffs assert that their earlier attempts to be involved in timely lawsuits somehow make this lawsuit timely, through equitable tolling or otherwise.[4]

Plaintiffs have forfeited their Rule 59(e) argument; and, even if they had not, they would not have succeeded in proving manifest injustice. Hence, their motion to alter or amend the judgment under Rule 59(e) will be denied.

   2. Vacatur Under Rule 60(b)

Plaintiffs argue in the alternative that the Court should relieve them from its earlier judgment under Rule 60(b). That rule allows relief from judgment for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Plaintiffs claim that excusable neglect justifies relief here. See P. & A. at 6. However, "[t]he standards that govern Rule 60(b) are even more restrictive and in most cases, the bar stands even higher for a party to prevail on a Rule 60(b) motion for relief from judgment than on a Rule 59(e) motion." Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 77 n.1 (D.D.C. 2013) (citation omitted), aff'd, 782 F.3d 9. In particular, "[i]t is well-established that Rule 60(b) is not designed to help '[a] party that has stipulated to certain facts or has not presented known facts helpful to its

---

[3] Indeed, the plaintiffs in two cases the Court decided in a companion to the March 30 opinion also missed out—assertedly, through no fault of their own—on earlier, timely suits filed by their family members. See Maalouf v. Islamic Republic of Iran, No. CV 16-1507 (JDB), 2018 WL 1567583, at *1–2 (D.D.C. Mar. 30, 2018). This did not prevent the Court from reaching the same conclusion in those cases as it did in this one.

[4] The Court's alternative analysis of the merits of plaintiffs' claim does not negate the Court's primary finding that their claim has been forfeited. See GSS Grp., 680 F.3d at 813 ("A district court does not open the door to further consideration of a forfeited claim by giving an alternative, merits-based reason for rejecting it.").

7

cause when it had the chance,' or to provide relief due to 'ignorance [or] carelessness on the part of a litigant or his attorney.'" Munoz v. Bd. of Trustees of Univ. of D.C., 730 F. Supp. 2d 62, 68 (D.D.C. 2010) (citations omitted). Therefore, just as plaintiffs have forfeited their Rule 59(e) claim, their failure to present the facts provided in their reconsideration motion earlier in the case makes Rule 60(b) relief inappropriate here.[5]

Assuming for the sake of argument that plaintiffs could introduce these old facts at this late date, the circumstances plaintiffs recount are not of the type that warrant relief under Rule 60(b). To determine whether a litigant's neglect is excusable, a court must examine factors including "the risk of prejudice to the non-movant, the length of delay, the reason for the delay, including whether it was in control of the movant, and whether the movant acted in good faith." FG Hemisphere Assocs., LLC v. Democratic Republic of Congo, 447 F.3d 835, 838 (D.C. Cir. 2006). However, these standards refer to neglectful delay in presenting an argument or meeting a deadline in the instant case—<u>not</u> delay in bringing the case in the first place. See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993) ("[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2858 (3d ed. 2012) (listing situations in which excusable neglect standard has been met).

---

[5] To be sure, "reconsideration under rule 60(b)(6) is proper" if "a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980). Plaintiffs do not put forward any separate arguments under Rule 60(b)(6) but rather limit their argument to one of excusable neglect under Rule 60(b)(1). See P. & A. at 6–8; see also Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988) (stating Rule 60(b)(6) is only available if "the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)"). Regardless, the Court has already explained in denying plaintiffs' Rule 59(e) motion why the facts they have now put forward neither are central to the Court's resolution of the litigation nor render the Court's prior judgment manifestly unjust.

Here, plaintiffs invoke Rule 60(b)(1) to excuse their "delay in discovering that their claims were not covered and their consequent filing of the instant case." P. & A. at 7. This sort of delay is simply not covered by Rule 60(b)(1)'s excusable neglect standard. And even if Rule 60(b)(1) applied to neglect that occurred before filing the action, plaintiffs' failure to recognize that they had not been joined to earlier lawsuits and had to file their own, timely claims would not warrant relief. Mazengo v. Mzengi, 542 F. Supp. 2d 96, 99 (D.D.C. 2008) ("Ignorance of one's legal obligations does not constitute the type of 'mistake' or 'neglect' that Rule 60(b)(1) excuses."). Hence, plaintiffs' motion for relief from judgment under Rule 60(b) will be denied.

## IV. CONCLUSION

The Court is sympathetic to plaintiffs' plight; it is unfortunate that poor communication or shoddy lawyering prevented them from being named in the Wamai and Opati litigation and thereby recovering damages. However, for the reasons explained above, the Court finds that neither Rule 59(e) nor Rule 60(b) relief is appropriate in this case. Plaintiffs' motion for reconsideration will therefore be denied. Plaintiffs have also requested an evidentiary hearing "to provide additional factual support for relief." P. & A. at 9. Neither plaintiffs' forfeiture of their arguments nor their failure to meet the standards for relief under each Rule would be changed by offering more factual support for their claims. Therefore, the request for an evidentiary hearing will also be denied.

/s/
JOHN D. BATES
United States District Judge

Dated: May 17, 2018